**C. L. BENNETT et al., Plaintiffs,**

v.

**Fred C. WORDEN and R. E. St. John, Defendants.**

**No. LR-63-C-83.**

United States District Court
E. D. Arkansas, W. D.
Jan. 10, 1964.

Henry Woods, of McMath, Leatherman, Woods & Youngdahl, Edward Lester, of Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., for plaintiffs.

Leon Catlett, of Catlett & Henderson, J. W. Barron, of Rose, Meek, House, Barron, Nash & Williamson, Little Rock, Ark., for defendants.

YOUNG, District Judge.

On September 12, 1963, defendant Fred C. Worden filed a "motion to realign party and to dismiss for lack of jurisdiction." On October 29, 1963—the plaintiff having been granted an additional period of time to respond—the plaintiff filed a brief in response to the motion. The issue is now before the Court.

Defendant Worden contends that Citizens Coach Company, an Arkansas corporation, is antagonistic to the plaintiffs' cause and therefore should be realigned. If Citizens Coach Company is realigned,

diversity will be destroyed and the case must be dismissed from this Court for lack of jurisdiction.

The individual plaintiffs—owners of preferred nonparticipating stock and various types of bonds issued by Citizens Coach Company—are all residents and citizens of Arkansas. Citizens Coach Company is an Arkansas corporation. The defendant Worden is a citizen of Iowa, and the defendant St. John is a citizen of Ohio.

On July 11, 1963, the individual plaintiffs brought an action pursuant to Rule 23(b) of the F.R.Civ.P., and the individual plaintiffs holding bonds issued by Citizens Coach Company also brought the action as a class of creditors of Citizens Coach Company.

Plaintiffs allege that: "The rights of Citizens Coach Company asserted by the plaintiffs in this derivative action arise out of the illegal withdrawal of corporate funds and the cancellation of the franchise of the corporation."

Among other acts against the corporate good, plaintiffs contend that on September 10, 1962 Worden agreed with St. John to sell to St. John all of the common stock of Citizens, and as a part of this agreement the parties agreed that Worden would assign 1160 shares of his common stock to Citizens and withdraw $46,400.00 of the assets in exchange for the stock. Further, state the plaintiffs, Worden and St. John agreed that Worden would sell to St. John the outstanding shares of Citizens' common stock—which, they contend, had no bona fide enterprise value—for $150,000.00 with an agreement that the franchises—which, plaintiffs contend, were worth $150,000.00—held by Citizens would be surrendered. The plaintiffs then state:

"The surrender of the two franchises was a part of a plan and scheme whereby a new corporation, Twin City Transit, Inc., formed by R. E. St. John, would succeed to the franchise rights of Citizens Coach Company. The true consideration for the $150,000.00 which R. E. St. John paid and agreed to pay to Fred C. Worden, was not the transfer of the common stock in Citizens Coach Company, but was, in fact, paid for the two franchises which were corporate assets. In the alternative, plaintiffs plead that the difference in the actual enterprise value of the common stock in Citizens Coach Company and the price received by the controlling common stockholder, Fred C. Worden, was $150,000.00, *and that R. E. St. John and Fred C. Worden are liable to the corporation for $150,000.00.*" (Emphasis supplied)

Plaintiffs further set out in their complaint that:

"R. E. St. John had full notice and knowledge that the payment he agreed to make to Fred C. Worden for the alleged sale of common stock in Citizens Coach was, in fact, made for the two franchises which were corporate assets, *and the plaintiffs are entitled to recover from R. E. St. John for the use and benefit of Citizens Coach Company* an amount equal to the unpaid balance on said note as of the date of the service of summons on R. E. St. John in this cause. *The Bondholder plaintiffs further plead that the cancellation of the two franchises was a fraud on the creditors of Citizens Coach Company and that the plaintiffs are entitled to recover from the defendants for the use and benefit of Citizens Coach Company* the entire amount paid or to be paid to Fred C. Worden for the alleged purchase of common stock in the corporation." (Emphasis supplied)

Further, as is required by Rule 23(b) of the F.R.Civ.P., the plaintiffs in their complaint set out the reasons for not making an effort to have the corporation itself enforce its rights. In this regard they plead that:

"The rights of Citizens Coach Company asserted by the plaintiffs in this derivative action arise out of

**44**

the illegal withdrawal of corporate funds and the cancellation of the franchise of the corporation. *The present Board of Directors and officers of Citizens Coach Company are nominees of, and are under the control of, R. E. St. John. As R. E. St. John had entered into contractual obligations concerning such transactions and controls the corporation, any demand by the plaintiffs on the directors of Citizens Coach Company to assert the rights of the corporation against Fred C. Worden would have been futile.*" (Emphasis supplied)

## CONCLUSIONS OF LAW

Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), which I think is the controlling case, clearly sets out the circumstances under which a corporation made a plaintiff in a stockholders' derivative suit should be realigned. The United States Supreme Court held:

" * * * Whenever the management refuses to take action to undo a business transaction or whenever, as in this case, it so solidly approves it that any demand to rescind would be futile, antagonism is evident. The cause of action, to be sure, is that of the corporation. But the corporation has become through its managers hostile and antagonistic to the enforcement of the claim."

Plaintiffs rightfully contend that if the management is not antagonistic [1] then the corporation should not be realigned, and they further contend that the only person antagonistic to their efforts is Worden and that since he has been disassociated with Citizens for nine months its management is not antagonistic. But how can this be? Plaintiffs themselves, as is clearly indicated by the portions of the complaint set out above, have claimed that R. E. St. John, who they argue is in control of Citizens, is liable to them for damages. Plaintiffs contend: (1) St. John and Worden agreed that Worden would withdraw $46,400.00 of Citizens assets in return for 1160 shares of worthless stock; (2) St. John ostensibly agreed to buy all of the outstanding shares of common stock in Citizens from Worden for $150,000.00, but, in fact, the consideration was for the two franchises which were corporate assets, and therefore Worden *and* St. John are liable to Citizens for the above mentioned $150,000.00; (3) Plaintiffs also allege that St. John had knowledge of these transactions and is responsible to the corporation for them, and; (4) The Bondholder plaintiffs contend that the cancellation of the two franchises was a fraud on the creditors of Citizens and that they should recover from the defendants (note that defendants is plural) the entire amount paid to Worden. It should be noted that plaintiffs also alleged in their complaint that since St. John controlled the corporation it would be *futile* to demand that the directors of Citizens bring this action. Certainly, in light of these contentions, I must hold that the corporation, through its directors, are antagonistic—at least as defined by the United States Supreme Court in Smith v. Sperling, supra—to the enforcement of these claims, and Citizens Coach Company must be realigned as a defendant. Since Citizens is an Arkansas corporation and the plaintiffs are Arkansas citizens diversity of citizenship is destroyed and this case must be dismissed for lack of jurisdiction.

[1]. It is not necessary that the directors act in bad faith, antagonism in this context does not mean that the directors have any sinister motive behind their actions. Sperling v. Smith, supra.